IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NIL LAROM and BAR LAROM, Personal Representatives of the Estates of DAPHNA LAROM, Deceased, and CAMILLE LAROM, Deceased, Israel, ) ) ) ) ) ) | | |
| and ) ) | | |
| NIL LAROM and BAR LAROM, in their own right, Quebec, Canada, ) ) ) ) | | |
| *Plaintiffs*, ) ) ) | Civil Action No. _____ | |
| v. ) ) | JURY TRIAL DEMANDED | |
| ORACAM LTD., a Delaware Corporation, Wilmington, Delaware, ) ) ) | | |
| and ) ) | | |
| THE NEW PIPER AIRCRAFT, INC., a Delaware Corporation, Vero Beach, Florida, ) ) ) ) | | |
| *Defendants*. ) | | |

**COMPLAINT**

Plaintiffs, Nil Larom and Bar Larom, Personal Representatives of the Estates of Daphna Larom, deceased, and Camille Larom, deceased, and Nil Larom and Bar Larom, in their own right ("Plaintiffs"), by and through the undersigned counsel, hereby allege as follows:

-2-

## NATURE OF THE ACTION

1. This is a survival and wrongful death action seeking damages for negligence and products liability arising from an airplane accident that occurred in Dampierre, France on January 2, 2004.

## THE PARTIES

2. Plaintiffs are Nil Larom and Bar Larom, and Personal Representatives of the Estates of Daphna Larom, deceased, and Camille Larom, deceased.  Although the decedents resided in France before their deaths, they were Israeli citizens, and the Plaintiffs have been recognized by the Family Court in Israel as Sole Heirs of the Estates of Daphna Larom and Camille Larom as well as by a Notary Act in France, and therefore, their Estates are being administered in Israel and France.

3. Plaintiff, Nil Larom, son of Daphna Larom and brother of Camille Larom, resides at 11115 Cavendish, No. 908, Ville St. Laruent, H4R 2M9, Quebec, Canada.

4. Plaintiff, Bar Larom, son of Daphna Larom and brother of Camille Larom, resides at 11115 Cavendish, No. 908, Ville St. Laruent, H4R 2M9, of Quebec, Canada.

5. Defendant, Oracam Ltd. ("Oracam"), is a Delaware corporation with its principal place of business in Wilmington, Delaware with a registered agent located at CorpAmerica, Inc., 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

6. Defendant, The New Piper Aircraft Inc. ("Piper"), is a Delaware corporation with its principal place of business in Vero Beach, Florida with a registered agent

located at The Prentice-Hall Corporation System, Inc., 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

## JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 28 U.S.C. §1332 in that there is complete diversity of citizenship between Plaintiffs and Defendants and the amount in controversy exceeds $75,000, exclusive of interests or costs.

8. Venue lies in the District of Delaware pursuant to 28 U.S.C. § 1391(a), in that Delaware is the state in which all Defendants reside.

## BACKGROUND FACTS

*ACCIDENT*

9. On January 2, 2004, a Piper aircraft ("Aircraft") took off from Ben Gurion Airport, Israel with a planned destination of Toussus-le-Noble, France, an airport west of Paris ("Flight"). The Flight was scheduled for an interim refueling stop on the island of Corfu.

10. Aboard the aircraft were the late Dov Larom, the pilot ("Pilot") of the Aircraft, the late Daphna Larom, his wife, and the late Camille Larom, their daughter.

11. The first leg of the Flight, which had an estimated flight time of three hours and fifty minutes, departed Israel at 5:00 a.m. Israeli Standard Time[1] and stopped in Corfu for refueling.

---

[1] There is a one-hour time difference between Israel and France. Thus, according to Central European time in France, the Flight departed Israel at 4:00 a.m.

12. After refueling in Corfu, the Flight was scheduled for air travel time of four hours and fifteen minutes between Corfu and Toussus-le-Noble, France.

13. After fully refueling in Corfu, the Aircraft was able to fly for approximately five and half hours at an elevation of 24,000 feet without need for refueling.

14. Prior to the departure from Corfu, the Pilot received a weather update concerning the expected meteorological conditions during the flight from Corfu to Toussus-le-Noble, France. The weather report projected a risk of strong winds, forceful rain, and the potential for severe icing.

15. Notwithstanding the weather report, and despite the fact that the total flight time from Israel to France required the Pilot to fly the Aircraft for approximately eight and one-half hours in a single day, the Pilot decided to depart from Corfu shortly after refueling and to proceed to France as scheduled.

16. On January 2, 2004, after approximately eight and one-half hours of flight time, the Pilot prepared to land at the Toussus-le-Noble airport. After the Pilot commenced his descent on runway 07L of the airport, the Aircraft suddenly deviated from the approach path, diverted to the right of the runway, and plummeted into the ground at an approximate angle of forty-five degrees ("Accident"). Upon crashing, the Aircraft's fuel tank ruptured and caught fire. The Accident claimed the lives of the Pilot and his two passengers – the Pilot's wife, Daphna Larom, and daughter, Camille Larom.

17. At the time of the Accident, an extremely dangerous mixture of weather conditions were present in the area surrounding the airport, which included severe icing conditions at elevations ranging from 1500 – 3000 feet, 93% humidity, and unstable weather.

18. At approximately 3:22 p.m. Central European Time, moments before the Accident, when the Pilot commenced his descent, he had been flying for almost five and one-half hours without refueling and consequently, he had insufficient fuel to land at an alternate location that was experiencing more favorable weather. The Pilot's failure to properly calculate the flight time or to navigate the flight plan according to the shortest possible route caused the Aircraft to have insufficient fuel reserves to allow the Pilot to avoid the dangerous weather conditions by landing at an alternate location.

19. An analysis of the events surrounding the Accident reveal that (1) the Pilot had been flying the Aircraft for approximately eight and one-half hours on January 2, 2004; (2) during the landing approach, the Aircraft's engine thrust was reduced, the landing gear was lowered, and a severe and continuous reduction in the aircraft's speed occurred; (3) during its descent, the Aircraft entered a severe icing zone; (3) at the peak of its descent, the air temperature around the Aircraft was negative 40 degrees Centigrade causing the Aircraft's fuselage and wings to become extremely cold; (4) during the Aircraft's descent, the 93% humidity combined with sub-freezing temperature of the Aircraft's outer skin, causing extensive icing to occur on the fuselage and wings of the Aircraft; (5) the added Aircraft weight associated with the icing reduced the aerodynamic profile of the Aircraft thereby reducing maneuverability; and (6) the Pilot was unable to timely contend with the icing and other weather conditions and as a result, lost control of the Aircraft leading to the Accident.

20. According to a French Ministry of Transport Investigation and Civilian Flight Safety ("FMTI") Report of the Accident, the loss of control over the Aircraft and the resulting Accident arose from the extensive icing on the Aircraft that the Pilot was unable to properly account for in attempting to land the Aircraft.

21. The FMTI Report also concluded that the eight and one-half hours of flight time by the Pilot on the day of the Accident caused fatigue that, integrated with the complex flight conditions, contributed to Pilot's failure to safely land the Aircraft.

*DECEDENTS*

22. The Pilot, the late Dov Larom, was an Israeli businessman, who managed businesses and companies throughout the world.  He worked for the Aviation Industries and the Ministry of Defense of Israel for approximately 20 years, and thereafter commenced his business activities in the private sector.

23. In his business in the private sector, the late Dov Larom specialized in the development of low cost, sophisticated products for the medical market.  He was involved and a direct and/or indirect partner in the activities of international companies in the sphere of manufacturing advanced medical instruments.  Dov Larom enjoyed great success in his business activities.

24. The late Daphna Larom, who was 43 years of age at the time of the Accident and her resulting death, was a partner in her husband, Dov Larom's businesses. Daphna Larom integrated and took active part in his business activities – whether in the organization, manufacturing, and acquisition sphere and also, in the marketing of the products

that her late husband developed.  The Accident, which ended her life, cut short the professional career of Daphna Larom, whose monthly earnings were approximately US $15,000.

25.    The late Camille Larom, the daughter of the Dov and Daphna Larom, was 16 year of age at the time of the Accident and her resulting death.  The late Camille Larom was an intelligent teenager, and an outstanding and talented student.  She intended to study engineering and her good academic grades ensured that she would be accepted (to such studies).

26.    As a result of the Accident and resulting deaths of their parents and sister, the Plaintiffs Nil and Bar Larom were left without parents, which has dramatically changed their lives, left them shocked, and caused them great pain and anguish every day.

27.    As a result of the Accident and resulting deaths of their parents and sister, the Plaintiffs Nil and Bar Larom have been deprived of their livelihood and support of the earnings of their parents and sister.

**COUNT I – SURVIVAL AND WRONGFUL DEATH
PLAINTIFFS V. ORACAM LTD.
<u>DIRECT NEGLIGENCE</u>**

28.    Paragraphs 1 through 27 are hereby incorporated by reference as though each were set forth at length herein.

29.    At the time of the Accident, Oracam was the owner, lessor, and/or charted the Aircraft, and was responsible for maintenance, operation, and the flight of the Aircraft.

30.    As owner of the Aircraft, Oracam had a duty to maintain the Aircraft and to oversee the actions of the Pilot responsible for flying the Aircraft.

31. Oracam was negligent in performance of its duties as the owner of the Aircraft by:

   a. Failing to act in a manner similar to that of a reasonable company in the aviation industry under the circumstances associated with the Accident;

   b. Failing to implement proper safety standards and procedures to prevent its Pilot from flying in conditions present during the Accident;

   c. Representing to the passengers that the Flight was safe and that Oracam complied with all proper safety measures;

   d. Failing to oversee its Pilot's implementation of a safe flight safety plan;

   e. Ignoring dangerous weather conditions in allowing its Pilot to proceed forward with the Flight;

   f. Employing a Pilot untrained and/or under skilled to fly the aircraft under the conditions associated with the Accident;

   g. Permitting the Pilot to land the Aircraft in dangerous icing conditions;

   h. Failing to provide guidelines or instructions to assist its Pilot with landing during difficult weather conditions;

   i. Failing to install aeronautical instruments and equipment measured by acceptable standards in the aircraft industry to assist its Pilot in determining flight elevation, visibility, and other necessary factors in landing the Aircraft in difficult weather conditions;

   j. Failing to test the Aircraft in conditions similar to those present during the Accident;

   k. Adopting faulty, careless, and unreasonable business standards;

   l. Breaching its duty of care under any Israeli law, including Flight Laws.

32. By reason of, and as a direct result of its negligence, Oracam legally and proximately caused the Accident, and the untimely deaths of Daphna and Camille Larom.

33. As a result of the Accident and their untimely deaths, Daphna and Camille Larom suffered conscious pain and suffering, and a loss of earnings from the Accident.

34. Plaintiffs, in their capacity as Personal Representatives of the Estates of Daphna and Camille Larom, are entitled to survival damages for Daphna and Camille Larom's conscious pain and suffering, and loss of their earnings resulting from the Accident.

35. As a result of the Accident and the untimely deaths of Daphna and Camille Larom, Plaintiffs Nil and Bar Larom suffered damages in their own right for the loss of expectation of monetary benefits that would have resulted from the continued lives of Daphna and Camille Larom, the loss of contributions for their support, the loss of parental and household services, reasonable funeral expenses, and mental anguish suffered by the Plaintiffs Nil and Bar Larom.

36. Plaintiffs Nil and Bar Larom, in their own right, are entitled to recover wrongful death damages for the loss of Daphna and Camille Larom, including damages for the loss of expectation of monetary benefits that would have resulted from the continued lives of Daphna and Camille Larom, the loss of contributions for their support, the loss of parental and household services, reasonable funeral expenses, and mental anguish suffered by the Plaintiffs Nil and Bar Larom.

**COUNT II – SURVIVAL AND WRONGFUL DEATH
PLAINTIFFS V. ORACAM LTD.
<u>RESPONDEAT SUPERIOR LIABILITY</u>**

37. Paragraphs 1 through 36 are hereby incorporated by reference as though each were set forth at length herein.

38. Oracam employed Dov Larom to pilot the Aircraft on the date of the Accident, and Dov Larom did in fact pilot the Aircraft on behalf of Oracam at the time of the Accident.

39. As the employer of the Pilot, Oracam is vicariously liable for the torts of the Pilot committed in the course and scope of the Pilot's employment.

40. The Pilot had a duty to act as a reasonable pilot and to act with the knowledge and skill of a pilot in good standing.

41. The Pilot breached his duty of care in the course and scope of his employment for Oracam by:

   a. Ignoring dangerous weather conditions in proceeding with the flight on the date of the Accident;

   b. Flying an Aircraft without the assistance of a co-pilot or other staff for a period of approximately eight and one-half hours;

   c. Attempting to land the Aircraft in a location where severe icing conditions were likely to occur thereby impairing his ability to land the Aircraft;

   d. Determining a faulty and unsafe flight plan;

   e. Failing to calculate the correct amount of fuel needed to land the Aircraft at an alternate airport, with more favorable weather conditions, on the date of the Accident;

   f. Failing to schedule a refueling layover between Corfu and Toussus-le-Noble;

   g. Representing to the passengers that the flight was safe and that he had complied with safety standards and other relevant procedures;

   h. Failing to take other necessary steps to extricate the Aircraft from the icing conditions;

                i.        Operating the Aircraft in a manner inconsistent with any Israeli law, aircraft manuals, or customary flight procedures.

42. By reason of, and as a direct result of the Pilot's negligence, the Pilot legally and proximately caused the Accident, and the untimely deaths of Daphna and Camille Larom.

43. As a result of the Accident and their untimely deaths, Daphna and Camille Larom suffered conscious pain and suffering, and a loss of earnings from the Accident.

44. Plaintiffs, in their capacity as Personal Representatives of the Estates of Daphna and Camille Larom, are entitled to survival damages for Daphna and Camille Larom's conscious pain and suffering, and loss of their earnings resulting from the Accident.

45. As a result of the Accident and the untimely deaths of Daphna and Camille Larom, Plaintiffs Nil and Bar Larom suffered damages in their own right for the loss of expectation of monetary benefits that would have resulted from the continued lives of Daphna and Camille Larom, the loss of contributions for their support, the loss of parental and household services, reasonable funeral expenses, and mental anguish suffered by the Plaintiffs Nil and Bar Larom.

46. Plaintiffs Nil and Bar Larom, in their own right, are entitled to recover wrongful death damages for the loss of Daphna and Camille Larom, including damages for the loss of expectation of monetary benefits that would have resulted from the continued lives of Daphna and Camille Larom, the loss of contributions for their support, the loss of parental and household services, reasonable funeral expenses, and mental anguish suffered by the Plaintiffs Nil and Bar Larom.

WL: #181400 v2 (3VYW02!.DOC)

## COUNT III – SURVIVAL AND WRONGFUL DEATH
## PLAINTIFFS V. THE NEW PIPER AIRCRAFT INC.
## **PRODUCTS LIABILITY**

47. Paragraphs 1 through 46 are hereby incorporated by reference as though each were set forth at length herein.

48. Piper was responsible for the design, manufacture, and sale of the Aircraft and was responsible for the installation of safety measures and the provision of warnings that could have enabled the Aircraft and the Pilot to make a safe landing at the time of the Accident.

49. Piper had a duty to design and manufacture the Aircraft in a manner consistent with that of reasonable aircraft manufacturer in its industry, and to provide warnings regarding the safe operation and piloting of the Aircraft in severe weather conditions.

50. Piper breached its duty of care by:

   a. Failing to act in a manner similar to that of a reasonable aircraft company doing business in the aviation industry;

   b. Failing to equip the Aircraft with proper instrumentation or equipment to assist the Pilot in handling weather conditions present at the time of the Accident;

   c. Failing to provide warnings regarding the piloting of the Aircraft in severe weather conditions;

   d. Failing to provide guidelines regarding the piloting of the Aircraft in severe weather conditions;

   e. Representing to the Pilot and passengers that the Aircraft was safe in weather conditions present at the time of the Accident;

   f. Ignoring the clear risks associated with the flight of the Aircraft in severe weather conditions;

   g. Failing to install sufficient anti-icing measures.

51. By reason of, and as a direct result of its negligence, Piper legally and proximately caused the Accident, and the untimely deaths of Daphna and Camille Larom.

52. As a result of the Accident and their untimely deaths, Daphna and Camille Larom suffered conscious pain and suffering, and a loss of earnings from the Accident.

53. Plaintiffs, in their capacity as Personal Representatives of the Estates of Daphna and Camille Larom, are entitled to survival damages for Daphna and Camille Larom's conscious pain and suffering, and loss of their earnings resulting from the Accident.

54. As a result of the Accident and the untimely deaths of Daphna and Camille Larom, Plaintiffs Nil and Bar Larom suffered damages in their own right for the loss of expectation of monetary benefits that would have resulted from the continued lives of Daphna and Camille Larom, the loss of contributions for their support, the loss of parental and household services, reasonable funeral expenses, and mental anguish suffered by the Plaintiffs Nil and Bar Larom.

55. Plaintiffs Nil and Bar Larom, in their own right, are entitled to recover wrongful death damages for the loss of Daphna and Camille Larom, including damages for the loss of expectation of monetary benefits that would have resulted from the continued lives of Daphna and Camille Larom, the loss of contributions for their support, the loss of parental and household services, reasonable funeral expenses, and mental anguish suffered by the Plaintiffs Nil and Bar Larom.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Nil Larom and Bar Larom, Personal Representatives of the Estates of Daphna Larom, deceased, and Camille Larom, deceased, and Nil Larom and Bar Larom, in their own right, demand judgment in their favor and against Oracam Ltd. and The New Piper Aircraft Inc., jointly and severally, for the following:

a. survival damages, including pain and suffering of the decedents, their medical expenses, and lost wages;

b. wrongful death damages including the loss of expectation of monetary benefits, loss of contributions for support, loss of parental and household services, reasonable funeral expenses, and mental anguish;

c. direct, actual, incidental, consequential, and compensatory damages;

d. prejudgment interest;

e. costs;

f. such other and further relief as the Court may deem just and proper

/s/   Albert Manwaring
Albert H. Manwaring, IV (#4339)
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
Tel: (302) 777-6514
Fax: (302) 421-8390
manwaringa@pepperlaw.com

Attorney for Plaintiffs

Dated: December 30, 2005

WL: #181400 v2 (3VYW02!.DOC)